**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4320**

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

    v.

STEVEN SCOTT NESTOR,

        Defendant – Appellant.

Appeal from the United States District Court for the Northern District of West Virginia, at Clarksburg. Irene M. Keeley, Senior District Judge. (1:17-cr-00043-IMK-MJA-1)

Submitted: August 31, 2018                    Decided: September 27, 2018

Before WILKINSON and FLOYD, Circuit Judges, and SHEDD, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Katy J. Cimino, Kristen M. Leddy, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Clarksburg, West Virginia, for Appellant. Traci M. Cook, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Clarksburg, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Indicted for illegal firearm possession, *see* 18 U.S.C. § 922(g)(1), Steven Scott Nestor moved to suppress the firearm and other contraband, arguing that the items were illegally seized during an investigatory stop that was both unsupported by reasonable suspicion and unreasonably extended to permit a vehicular dog sniff. In a 35-page written order, the district court denied the motion. *United States v. Nestor*, 2018 Westlaw 447618 (N.D. W.Va. Jan. 17, 2018) (J.A. 166-201). Nestor then conditionally pled guilty to the charged offense and was sentenced to a 70-month imprisonment term. Consistent with his conditional plea, Nestor now reiterates his arguments and contends that the court erred by denying his suppression motion. We affirm.

I

During the suppression hearing, the government presented several exhibits and the testimony of West Virginia Division of Natural Resources ("DNR") Officer Benjamin Riley.[1] Nestor's counsel cross-examined Officer Riley, but Nestor did not testify or present any evidence. *See* J.A. 103, 168. As the district court later noted in its order denying the suppression motion, Nestor did not challenge the veracity of Officer Riley's testimony and did not appear to seriously dispute the underlying facts. *See* J.A. 168.[2]

---

[1] The suppression motion was initially referred to a magistrate judge, who conducted the evidentiary hearing and recommended that the motion be denied, albeit on slightly different grounds. *See United States v. Nestor*, 2017 Westlaw 9517166 (N.D. W.Va. Dec. 6, 2017) (J.A. 142-54).

[2] To the extent that Nestor disputes the district court's factual findings, we review them for clear error, considering the evidence in the light most favorable to the (Continued)

2

The district court found that on May 10, 2017, Officer Riley was on duty traveling on a rural road in Harrison County, West Virginia, when he observed Nestor removing items from the bed of a truck that was parked off the left side of the road, on private posted property, and placing them on the ground. Officer Riley described the items - which included bottles, cans, tires, an old hay bale, and other material - as "trash" or "junk." J.A. 169.

Officer Riley knew the rural road to be an area where individuals illegally discarded garbage, and he had received prior complaints from nearby residents about individuals creating open dumps on the roadside. Under West Virginia law, "[o]pen dumps are prohibited and it is unlawful for any person to create, contribute to, or operate an open dump or for any landowner to allow an open dump to exist on the landowner's property unless that open dump is under a compliance schedule approved by the [State]." W.Va. Code § 22-15-10(a). An "open dump" is "any solid waste disposal which does not have a permit under this article, or is in violation of state law, or where solid waste is disposed in a manner that does not protect the environment." W.Va. Code § 22-15-2(23). A person who willfully or negligently violates the open dump law is guilty of a misdemeanor and is subject to possible fines and imprisonment. W.Va. Code § 22-15-15(b)(3). DNR officers, such as Officer Riley, are authorized to arrest on sight any person

---

government. *United States v. Kolsuz*, 890 F.3d 133, 141-42 (4th Cir. 2018). We review the district court's legal conclusions de novo. *Id.*

who commits a criminal offense in violation of state law in the officer's presence. W.Va. Code § 20-7-4(b)(1).

Officer Riley stopped and asked Nestor what he was doing. Nestor responded that he was making room in the truck to haul away portions of a nearby dilapidated trailer. At that time, Officer Riley saw another person hiding on the opposite side of Nestor's truck. With his suspicion raised, Officer Riley ordered the person to show his hands. When the person stepped out, Officer Riley recognized him as David Wayne Martin, who was his cousin and whom he had arrested in the past.

Being suspicious of Nestor's explanation and Martin's attempt to hide, Officer Riley parked his truck and continued to question the two men, who asserted that they had permission from the landowner to tear down the dilapidated trailer. Officer Riley was familiar with the area, but he did not recognize the name of the landowner that Nestor and Martin provided. As he questioned the two men, a nearby resident approached, and Officer Riley attempted to confirm the name of the landowner given by Nestor and Martin. However, the resident stated that the name they gave was not the true landowner's name and that Nestor's vehicle should not be on the property.[3]

Presented with this information, Officer Riley radioed dispatch (at 12:31 p.m.) that he was investigating an illegal dump and requested a warrant check on Nestor and Martin. Shortly thereafter, dispatch informed Officer Riley that there was a possible

---

[3] Nestor later admitted that he and Martin had been removing items from the truck so that they could complete a tree job in a nearby town. Officer Riley believed this explanation because he knew that Martin cut trees.

warrant on Martin for illegal firearm possession and one on Nestor for writing a bad check. Upon learning this information, Officer Riley handcuffed Nestor and Martin and requested assistance to transport them. In response, at 12:37 p.m., Harrison County Deputy Sheriff Brian Deem was directed to assist Officer Riley. Thereafter, dispatch informed Officer Riley that the warrant thought to be outstanding on Martin was actually for Martin's son.

While awaiting confirmation regarding Nestor's possible warrant, Officer Riley questioned Nestor and Martin about several new items that were in the back of their truck. Nestor replied that they had purchased the items at Wal-Mart and that the receipt was inside the truck. Officer Riley asked whether there were any drugs or guns in the truck and whether he could search it. Nestor refused to consent to the search, and Officer Riley requested a canine unit. Dispatch advised Officer Riley that Deputy Deem was *en route* and wanted to speak to Nestor and Martin, and that the possible warrant against Nestor could not be confirmed. At 12:41 p.m., Harrison County Deputy Sheriff John Laulis, the canine unit officer, was dispatched to the scene.

As Officer Riley proceeded to obtain the license number on Nestor's truck, Nestor admitted that the license plate was issued for another vehicle he owned and that the truck was not registered or insured. After confirming Nestor's admission and that neither Nestor nor Martin had a valid driver's license, Officer Riley decided to arrest them for the misdemeanor offense of creating an open dump. Officer Riley typically permits individuals to correct their actions rather than arresting them for creating an open dump, but he felt that the totality of the circumstances warranted an arrest in this situation.

5

At 12:50 p.m., after Officer Riley decided to arrest Nestor and Martin, Deputy Deem arrived on the scene, followed eight minutes later by Deputy Laulis, who proceeded to conduct a dog sniff around the truck. After the dog made a positive alert, the officers searched the truck and seized the firearm at issue in this case, as well as other firearms, drugs, and drug paraphernalia. Subsequently, Officer Riley requested a tow truck be sent to remove Nestor's truck from the scene.

II

As noted, Nestor argued below that the officers discovered and seized the firearm and other items as the result of an investigatory search that was not supported by reasonable suspicion and was unreasonably extended to accomplish the dog sniff. In its thorough order denying the motion, the district court found and concluded that (1) although Officer Riley's encounter with Nestor was non-consensual, the investigatory stop was justified at its inception because Officer Riley had a reasonable, articulable suspicion that Nestor was creating an unlawful open dump; (2) Officer Riley did not unduly extend Nestor's detention beyond a reasonable amount of time to investigate the creation of an open dump; (3) Officer Riley had probable cause to arrest Nestor for creating an open dump; and (4) the dog sniff of Nestor's truck was permissible because he had been lawfully arrested and the truck was not in a constitutionally protected area.

Having carefully considered the parties' arguments under the appropriate standard of review, we find no error in either the district court's factual findings, which are supported by the record, or legal conclusions, which comport with the controlling legal principles. Stated succinctly, we agree with the district court's apt summary: "Officer

Riley subjected Nestor to a lawful investigatory detention pursuant to *Terry v. Ohio*, which concluded in an arrest supported by probable cause to believe that Nestor had been creating an open dump. The subsequent dog sniff and search of Nestor's truck likewise were in compliance with the Fourth Amendment." J.A. 200.

Accordingly, we affirm substantially on the reasoning of the district court. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*